597 A.2d 1274

**Paul KOSSMAN, Appellant,**

**v.**

**ZONING HEARING BOARD OF the BOROUGH OF GREEN TREE and PWC Associates, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Feb. 12, 1991.

Decided Oct. 21, 1991.

108

Ronald G. Baker, for appellant.

William R. Sittig, Jr., for appellees.

Before McGINLEY and KELLEY, JJ., and NARICK, Senior Judge.

KELLEY, Judge.

This is an appeal by Paul Kossman from a July 20, 1990 order of the Allegheny County Court of Common Pleas (trial court) which affirmed the decision of the Zoning Hearing Board of the Borough of Green Tree (board), insofar as that decision permitted the use of the top two floors of Parkway Center, Building #7 (the property), as offices. We affirm.

The property is a ten-story commercial building in the Borough of Green Tree which is owned by PWC Associates (owner) and is zoned Commercial "B" under the Borough of Green Tree Zoning Ordinance (ordinance). On June 5, 1989, a fire rendered floors eight through ten of the property uninhabitable. Town Development, Inc. had leased the ninth and tenth floors from owner and operated those floors as sleeping rooms, meeting rooms and banquet facilities (executive suite) from 1976 until June 5, 1989. On June 8, 1989, owner gave Town Development formal written notice of its termination of the written lease, pursuant to a casualty provision set forth in paragraph 11 of the lease.

On August 2, 1989, owner filed an application with the board to use the ninth and tenth floors of the property as offices. At the time owner's application was filed, the ordinance permitted only executive suite use above eight stories. Owner presented four alternative theories as justi-

fication for its requested change of use: (1) business offices are permitted as of right; (2) the executive suite use is a legal non-conforming use and may be changed to another non-conforming use of the same or higher classification, or to a permitted use; (3) limiting the use of floors nine and ten to executive suites creates an illegal spot zone; and (4) a use variance should be granted, since the continued use of floors nine and ten as an executive suite is no longer feasible and would create an undue hardship on the owner.

Kossman, the former owner of the property, the president and majority stockholder of Town Development, and the owner or operator of various properties adjacent and contiguous to the property, objected to owner's application. A hearing on the application was scheduled for August 29, 1989. Owner requested a continuance after it was informed on August 28, 1989, that Kossman had requested a withdrawal of owner's legal counsel. The board granted a continuance and the hearing was rescheduled for September 21, 1989.

At that hearing, Kossman, claiming specific rights to parking north and south of the property, testified that the proposed business office use would have an adverse effect on parking in the Parkway Center complex. He also testified that the property could be reconstructed as an executive suite which would comply with various building codes. Kossman expressed his desire to continue operating the executive suite use on the ninth and tenth floors and admitted that he opposed reconstruction of the property as office space strictly from a business point of view for his own self interest.

By decision of October 24, 1989, the board granted owner a use variance for the top two floors of the property from hotel and banquet facilities to offices. Kossman appealed to the trial court. The trial court affirmed the board's decision insofar as it permitted owner to use the ninth and tenth floors as offices, but found that no variance was necessary because owner was entitled to change from one permitted use to another. In the course of the proceedings

below, the trial court denied Kossman's motion for presentation of additional evidence. Kossman appealed to this court and owner intervened.

On appeal to this Court, Kossman raises the following issues: (1) whether Ordinance No. 1146 was intended to expand the possible uses in stories of buildings higher than eight; (2) whether "executive suite use" was a permitted or a legal non-conforming use; (3) whether owner has met its burden of proof with regard to the use variance granted by the board; (4) whether proper notice of the hearing before the board was given; (5) whether the board and the trial court erred in refusing to allow Kossman to introduce additional evidence. Kossman also addresses owner's claim that Section 1270.03(a)(3) of the ordinance constitutes illegal spot zoning.[1]

The provisions of the ordinance which pertain to the Commercial B District are set forth in Chapter 1270 of the ordinance. When owner filed its application on August 2, 1989, Section 1270.03(a)(3) of the ordinance provided as follows:

> The maximum height of any building shall be ninety-eight feet or eight stories. Building height shall be measured from the mean elevation of the ground on which the building is constructed. An additional two stories or thirty-seven feet of height may be allowed as a special exception for an executive suite use.

On September 11, 1989, the borough council adopted Ordinance No. 1146, which amended Section 1270.03(a)(3) to read:

> The maximum height of any building shall be ninety-eight feet or eight stories, whichever is less. Building height

1. Where, as here, the trial court takes no additional evidence in a zoning case, our scope of review is limited to determining whether the board's findings are supported by substantial evidence, and whether the board has abused its discretion or committed an error of law. *Neighbors, Keiners Lane v. Township of Robinson,* 121 Pa.Commonwealth Ct. 346, 550 A.2d 863 (1988), *petition for allowance of appeal denied,* 522 Pa. 581, 559 A.2d 41 (1989).

shall be measured from the mean elevation of the ground on which the building is constructed.

The earlier version of Section 1270.03(a)(3) allowed deviation from the borough's height requirement as a special exception. It did not limit executive suite use only to the ninth and tenth floors, nor did it require a special exception for executive suite use generally. Ordinance No. 1146 merely limits the height of new buildings, thereby rendering the ninth and tenth floors of the property a non-conforming structure. By eliminating the distinction between executive suite use and other permitted uses above eight stories, Ordinance No. 1146 expanded the possible uses on the ninth and tenth floors of the property to include all permitted uses. The amended version of Section 1270.03(a)(3) was in effect at the time of the September 21, 1989 hearing. Therefore, any permitted use was allowed on the ninth and tenth floors of the property.

Section 1270.01 of the ordinance lists permitted uses as follows:

In the Commercial B District, land may be used and buildings or structures may be erected, altered or used only for the following:

(a) Business, finance, professional, administrative, sales and consulting offices, with display areas;

. . . .

(e) Only the following ancillary commercial retail uses are permitted:

. . . .

(19) An executive suite containing conference and meeting rooms, restaurant facilities and transient housing accommodations intended solely to serve the tenants in, and business visitors to, the business establishments renting or owning offices within an office building complex located in this [Commercial B] District . . . [N]o such executive suite housing accommodation units shall be on the first or second story of any building in such office building complex.

Citizens may use their property for any purpose allowed by a zoning ordinance. *Jacobs v. Philadelphia Zoning Board of Adjustment*, 1 Pa.Commonwealth Ct. 197, 273 A.2d 746 (1971). In zoning terminology, the term "permitted use" generally refers only to those uses allowed absolutely and unconditionally. *Kopelman v. Zoning Hearing Board, City of New Kensington*, 55 Pa.Commonwealth Ct. 306, 423 A.2d 761 (1980). "Where a zoning hearing board or a court finds that a use is permitted under the zoning ordinance there is no basis for the imposition of restrictions on the use greater than those specified in the ordinance itself." *Keiners Lane*, 121 Pa.Commonwealth Ct. at 350, 550 A.2d at 865, citing 2 Ryan, Pennsylvania Zoning Law and Practice § 9.4.18. Moreover, when interpreting a zoning ordinance provision governing permitted uses, we must give the landowner the benefit of the interpretation least restrictive of his use and enjoyment of the property. *Laird v. City of McKeesport*, 88 Pa.Commonwealth Ct. 147, 489 A.2d 942 (1985).

Business office use is clearly a permitted use provided for in the ordinance. As such, owner is absolutely and unconditionally allowed to reconstruct the ninth and tenth floors of the property as offices.[2]

The next issue raised by Kossman is whether the trial court erred in denying his motion to submit additional evidence. In order to be entitled to present additional evidence, an appellant must demonstrate either that the record before the board is incomplete because appellant was refused the opportunity to be fully heard, or that relevant testimony was excluded. *Lower Allen Citizens Action Group, Inc. v. Lower Allen Zoning Hearing Board*, 93 Pa.Commonwealth Ct. 96, 500 A.2d 1253 (1985). Whether additional evidence is permitted in a zoning case rests with the lower court's discretion. *Id.; see also* Section 1005–A

2. Because we have determined that owner is entitled to use the ninth and tenth floors of the property as offices, we need not address the issues of whether owner was entitled to a use variance or whether Section 1270.03 constitutes invalid spot zoning.

of the Pennsylvania Municipalities Planning Code [3] (MPC), 53 P.S. § 11005–A. In addition, a court may properly refuse to consider additional evidence where that evidence was available at the time of hearing. *Hogentogler v. Windsor Township Zoning Hearing Board,* 65 Pa.Commonwealth Ct. 451, 442 A.2d 834 (1982).

■ At the hearing before the board, Kossman requested a continuance to review sources relied on by owner's expert and to research the zoning ordinance, parking statistics, and various building and safety codes. The board denied this request and Kossman subsequently filed a motion for presentation of additional evidence and a similar amended motion. Although Kossman's amended motion included a traffic study, it did not address the zoning ordinance nor did it address building and fire code compliance.

Kossman's primary contention was that he had not been provided a sufficient opportunity to review the report on which owner's expert based his testimony. However, Kossman's counsel was granted recess to review the four-page report on which owner's expert based his testimony before proceeding with cross-examination and before Kossman testified. A careful review of the record reveals that the testimony offered by owner's expert was directly related to parking demand, one of Kossman's principle objections to the proposed business office use. In addition, Kossman's claim that he had been refused the opportunity to be fully heard and that relevant testimony was excluded is unfounded. Kossman testified at length in an attempt to rebut the testimony of owner's expert, presenting figures and projections regarding parking demands which were based on his own personal knowledge of the actual parking patterns in the Parkway Center complex. Considering the length and contents of the report of owner's expert, the fact that the board granted Kossman's counsel a recess to review the report, Kossman's testimony and the availability of informa-

3. The Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* added by Act of December 21, 1988, P.L. 1329.

tion similar to that provided by owner's expert through due diligence prior to the hearing, the trial court did not err in denying Kossman's motion to submit additional evidence.

 Finally, Kossman claims that the borough failed to properly post notices of the September 21, 1989 hearing. The party challenging the adequacy of notice has the burden of showing that the notice provided was inadequate. Public notice, both written and by conspicuous posting, must be given of hearings to be conducted by the board. Section 908 of the MPC, 53 P.S. § 10908. Kossman claims that notice of the hearing was not conspicuously posted. However, a review of the record reveals that notices were posted in conspicuous areas outside the entrances to the property, that the hearing was duly advertised in the proper newspapers, and that Kossman had actual notice of both hearings and was represented by legal counsel at both.

 Kossman also claims that the notice posted was legally inadequate. Section 916.1(e) of the MPC, added by Act of December 21, 1988, P.L. 1329, provides that where the validity of an ordinance is challenged, public notice shall give the place where and the times when a copy of the request, including any plans, explanatory material, or proposed amendments may be examined by the public. 53 P.S. § 10916.1(e).

Kossman claims that although the notice posted did say "validity challenge," mere reference to such a challenge is inadequate, especially where nothing in the record indicates that all of the requisite information was provided by the notice posted. However, the purpose of the specific notice requirements in Section 916.1(e) is to provide the public an opportunity to review explanatory material or proposed amendments. The only document available for inspection in this case was the application itself. The information contained on the placards posted provided adequate information to enable any member of the public to examine a copy of the application and to determine the nature of owner's

request. Therefore, the notice posted by the Borough of Green Tree was adequate.

Accordingly, we affirm.

## ORDER

AND NOW, this 21st day of October, 1991, the order of the Court of Common Pleas of Allegheny County, No. S.A. 2106–89, dated July 20, 1990, is affirmed.