EASTERN CONSOLIDATION AND DISTRIBUTION SERVICES, INC., Baron Enterprises, Hugo Services, Inc., Eastern Repair Center, Inc., New Penn Motor Express, Lebarnold, Inc. and Arnold Industries, Inc., Appellants

v.

BOARD OF COMMISSIONERS OF HAMPDEN TOWNSHIP and Waste Management of Pennsylvania, Inc.

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 1997.

Decided Oct. 14, 1997.

Eugene E. Dice, Harrisburg, for appellants.

Keith O. Brenneman, Mechanicsburg, for appellee, Board of Commissioners of Hampden Township.

Michael A. Finio, Harrisburg, for appellee, Waste Management of PA

Before McGINLEY and PELLEGRINI, JJ., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Before this Court is an appeal of a February 5, 1997 order of the Cumberland County Court of Common Pleas affirming Appellee Board of Commissioners of Hampden Township's (the Township) approval of a land development plan for a municipal waste transfer station filed by Intervenor Waste Management of Pennsylvania, Inc. (Waste Management).

On August 23, 1995, Waste Management filed an Application for Subdivision or Land Development Approval with the Township, requesting permission to construct a solid waste transfer facility on a 16.61–acre lot in an Industrial Park in the Township's Industrial (General) (I–G) zoning district. Waste Management proposed to construct an 11,250–square foot transfer building and access drive, transfer trailer storage area, and a truck weighing station, utilizing 1.94 acres of the parcel. As found by the trial court, the proposed transfer station was to be a facility for the collection of municipal and construction waste from incoming trucks, the temporary storage of such waste on-site in an enclosed building, and the transfer of the waste to outgoing trucks for processing or disposal at another facility. The facility would transfer up to 600 tons per day on the average, with a maximum of 800 tons per day, of municipal, commercial, nonhazardous industrial solid waste, and nonimpacting municipal-like waste from industrial facilities.

Waste Management's application was considered at a meeting of the Township Planning Commission on September 14, 1995. At the meeting, Waste Management addressed several concerns raised by the Township including storm water management plans for the site, potential traffic problems near the site, the need for a queuing area for trucks at the site and potential odor problems. The Planning Commission voted unanimously to approve the preliminary land development plan, subject to review and approval by the Pennsylvania Department of Environmental Protection and the Cumberland County Planning Commission.

The Township Board of Commissioners subsequently considered the application at a September 27, 1995 meeting, and then tabled it pending submission by Waste Management of a proposal concerning a contribution to the upgrade of the intersection of the Industrial Park access road and the adjacent road. Waste Management later agreed to pay $15,000 to the Township toward improvement of the intersection. The application was consid-

ered again at a November 2, 1995 meeting of the Board, at which counsel for business neighbors of the proposed development, Appellants herein,[1] appeared to raise their objections concerning potential traffic, water and odor problems. Following discussion, the Board voted unanimously to approve the plan.

Appellants appealed the Board's decision granting Waste Management's application to the trial court, and Waste Management intervened. A motion for hearing to present additional evidence filed by Appellants was denied, because the court concluded that the issues raised by the appeal had been discussed during the approval process by both the Planning Commission and the Board, and that the merits could be considered on the existing record. After conducting a de novo review of the evidence presented to the Board, and making its own findings of fact based on that record, the trial court issued an order affirming the approval of the land development plan. Appellants' appeal of this order is now before us.

As a preliminary matter, the scope of our review in this case requires some explanation. First, as we will conclude below, the trial court properly exercised its discretion not to take additional evidence. In such a situation, where the trial court takes no evidence, we would normally review the *board's* decision to determine if it committed an error of law or abused its discretion, which may be found if the board's findings of fact are not supported by substantial evidence. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). In the case at bar, however, the court made its own findings of fact, pursuant to Section 1005-A of the Municipalities Planning Code (MPC),[2] 53 P.S. § 11005-A, which provides that in a land use appeal, "if the record does not include findings of fact, the court shall make its own findings based on the record below." We have held that the court may make the necessary findings under the MPC, where the board has not, even

if it takes no additional evidence. *Ford v. Zoning Hearing Board of Caernarvon Township,* 151 Pa.Cmwlth. 323, 616 A.2d 1089 (1992).

■ In a case where the trial court takes no additional evidence, but makes it own findings based on the record before the board, we must examine the *trial court's* decision, not the board's, for evidentiary support. *Koutrakos v. Zoning Hearing Board of Newtown Township,* 685 A.2d 639 (Pa. Cmwlth.1996). *See also Gryshuk v. Kolb,* 685 A.2d 629 (Pa.Cmwlth.1996) (trial court is the fact-finder when the board has not made findings). Accordingly, the scope of our review in the case now before us is whether the trial court committed an abuse of discretion or an error of law. *Faulkner v. Board of Adjustment of Moosic Borough,* 154 Pa. Cmwlth. 616, 624 A.2d 677 (1993). We may conclude that the court abused its discretion only if its findings are not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Association.*

Keeping in mind our appropriate scope of review, we will address the following issues raised by Appellants: 1) whether the trial court abused its discretion, violated the Local Agency Law and denied Appellants' right to due process by denying their motion for hearing to present additional evidence; 2) whether a municipal waste transfer station is a permitted use within the Township's I-G zoning district; and 3) whether the trial court's findings of fact are supported by substantial evidence.

**Motion to Present Additional Evidence**

■ Appellants argue initially that the trial court erred in denying their motion for hearing to present additional evidence. They claim that without a hearing, the trial court did not have sufficient evidence to rule on the issues raised. We do not agree. Section

1. Appellants are Eastern Consolidation and Distribution Services, Inc., Baron Enterprises, Hugo Services, Inc., Eastern Repair Center, Inc., New Penn Motor Express, Lebarnold, Inc., and Arnold Industries, Inc.

2. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 11005-A. Section 1005-A was added by Act of December 21, 1988, P.L. 1329.

1005–A of the MPC, 53 P.S. § 11005–A, provides, in part, as follows:

> If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence.

The question of whether the presentation of additional evidence is to be permitted under this provision is a matter within the discretion of the trial court. *Kossman v. Zoning Hearing Board of the Borough of Green Tree,* 143 Pa.Cmwlth. 107, 597 A.2d 1274 (1991). In applying Section 1005–A, this Court has held:

> A court of common pleas faces compulsion to hear additional evidence in a zoning case *only* where the party seeking the hearing demonstrates that the record is incomplete because the party was denied an opportunity to be heard fully, or because relevant testimony was offered and excluded.

*In re Appeal of Little Britain,* 651 A.2d 606, 613 (Pa.Cmwlth.1994), *petition for allowance of appeal denied,* 541 Pa. 645, 663 A.2d 696 (1995), citing *Danwell Corporation v. Zoning Hearing Board of Plymouth Township,* 115 Pa.Cmwlth. 174, 540 A.2d 588 (1988), *petition for allowance of appeal denied,* 520 Pa. 620, 554 A.2d 511 (1988).

Appellants argue that they should have been permitted to present additional evidence on appeal to the trial court on the grounds that the record is incomplete because they had had no notice of the underlying proceeding until the day of the meeting at which the Board acted on Waste Management's application, and so no opportunity to be heard. They claim that they were deprived of their right to notice and an opportunity to be heard, in violation of the Local Agency Law[3] and their due process rights,

and that it was an abuse of the trial court's discretion not to remedy this by granting their motion.

■ Under Section 508(5) of the MPC, 53 P.S. § 10508(5), a governing body or planning agency *may* hold a public hearing, after notice, before acting on a subdivision or land development. There is no mandatory requirement that a hearing be held prior to the approval of a land development plan. Likewise, under the Township's Land Development Ordinance, the Board of Commissioners *may* hold a hearing before acting on either a preliminary or final plan. In this case, the Board chose not to hold a hearing on Waste Management's application, and it was not required to do so under either the MPC or its own ordinance.

■ Appellants claim that regardless of the provisions of the MPC, they had a right to a hearing under Section 553 of the Local Agency Law, 2 Pa.C.S. § 553, which provides that "[n]o adjudication of a local agency shall be valid as to any *party* unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." Appellants, however, were not parties to the proceedings before the Township's Board of Commissioners or its Planning Commission. They were not entitled to a hearing before the Board, so the provisions of the Local Agency Law, requiring notice and an opportunity to be heard when there is a hearing, do not apply.[4]

We agree with the trial court's conclusion that the record was sufficient for it to effectively review and address Appellants' arguments. Even with little notice of the meeting at which Waste Management's application was approved, Appellants' attorney appeared and presented documents describing problems with the proposed plan, including concerns relating to traffic, pollution and flooding, and problems with potential insect, rodent, and bird harborage and attraction to the site.[5] This documentation,

---

**3.** 2 Pa.C.S. §§ 551–555, 751–754.

**4.** We also reject to Appellants' argument that the Local Agency Law became applicable at the trial court level, where they were parties.

**5.** As asserted in the documents submitted by Appellants, particularly pleadings filed in a matter pending before the Environmental Hearing Board, Appellant Eastern Consolidation and Distribution Services operates a food warehousing,

which included a 60–page traffic study and copies of Appellants' pleadings in the Environmental Hearing Board proceeding, was accepted by the Board and became part of the record on which the trial court based its findings of fact. A review of the trial court's well-reasoned opinion, including extensive and detailed findings of fact, reveals that the court considered the evidence presented by Appellants, as well as the other evidence of record.

We, accordingly, conclude that the trial court did not abuse its discretion in denying Appellants' motion for hearing to present additional evidence.

### Permitted Use

■ Appellants also argue that the trial court erred in concluding that a waste transfer station is a permitted use in the Township's I–G zoning district. The issue of whether a proposed use falls within a given category of permitted use in a zoning ordinance is a question of law, subject to our review. *Rapaport v. Zoning Hearing Board of the City of Allentown,* 687 A.2d 29 (Pa. Cmwlth.1996).

Under Section 502.4 of the Township's Land Development Ordinance, "proposed land uses shall conform to the Township Zoning Ordinance." Section 1403 of the Zoning Ordinance lists the thirty-one permitted uses in the Township's I–G district. The trial court concluded that the type of activity to be conducted at the proposed waste transfer station is sanctioned in the I–G zoning district, under the following categories of permitted uses specified in Section 1403:

10. *Freight terminal* and freight yards.

. . . .

13. Grain elevators and *bulk storage* of petroleum and similar products.

14. Railroad yards, repair shops, roundhouse and *truck terminals.*

. . . .

18. *Distribution plants,* parcel delivery and service industries.

. . . .

29. Wholesale businesses, welding shops, *warehouses* and cold storage plants.

(Emphasis added.)

■ In its opinion, the trial court focused, initially, on the dictionary definition of the term "distribution," concluding that the consolidation of waste for transfer falls within the scope of the phrase "distribution plant," as used in Section 1403(18). We agree with Appellants, however, that "distribution plant" does not encompass a waste transfer station, applying either dictionary definitions or this Court's decision in *Danwell Corporation v. Zoning Hearing Board of Plymouth Township, supra.,* wherein we held that a trash transfer station did not constitute "distribution." [6]

■ The trial court also concluded that a waste transfer station, if not a distribution plant, was otherwise sanctioned in the I–G district, serving the function of a bulk storage area, junk yard, warehouse and terminal. We agree with the trial court's conclusion that a transfer station should be permitted in the Township's general industrial district.

■ First of all, we have held that a trash transfer station is a legitimate use and cannot be constitutionally excluded in totality from a municipality. *Toms v. Board of Supervisors of Washington Township,* 123 Pa. Cmwlth. 165, 553 A.2d 507 (1989). If a zoning ordinance is construed to not allow a transfer station, then the ordinance would have such exclusionary effect. *See Tohickon*

storage and consolidation business in the vicinity of the proposed transfer station and is particularly concerned with odors and rodents. *See* R.R. at 203a.

6. In the *Danwell* case, Danwell sought to construct a transfer station in a light, or limited, industrial zoning district. It argued that the zoning ordinance at issue was broad enough to encompass the station in a category of permitted

uses which included "[w]arehousing, distributing, laundrying, cleaning and dyeing." We adopted the trial court's conclusion that the transfer station emphasized the collection of trash from many sources, the consolidation of the trash on the subject property, and the shipping of the trash in bulk to a landfill source, and that such a use does not constitute distribution.

*Valley Transfer, Inc. v. Tinicum Township Zoning Hearing Board,* 97 Pa.Cmwlth. 244, 509 A.2d 896 (1986) (trash transfer station found to be within a permitted use for "junkyard").

In this case, a "waste transfer station," although not specifically identified in the Zoning Ordinance's list of the thirty-one uses permitted in the Township's I–G district, is not prohibited by the Ordinance. Because such a use, however, is not specifically provided for in any other provision of the Zoning Ordinance, a construction of Section 1403 which does not encompass a transfer station has an exclusionary effect. As recognized by the trial court, a constitutional interpretation must be favored over one raising constitutional doubts.

Accordingly, because a transfer station is not permissible elsewhere in the Zoning Ordinance, it must be permitted in the I–G district, the Township's only industrial district. As the Township queries in its brief, "If not there, where?" Regardless, Section 1403 of the Zoning Ordinance is broad enough to encompass the *activity* at a waste transfer station, i.e., the ingress and egress of trucks along with the transfer, movement, storage, collection, and distribution of various types of products, if not the actual *product* being stored or transferred.

Accordingly, we conclude that the trial court did not err as a matter of law in holding that the waste transfer station was a permitted use in the Township's I–G district.[7]

### Substantial Evidence

Finally, Appellants argue that the trial court's findings of fact on the issues of flooding, on-site contamination and traffic are not based on evidence within the record or are not supported by substantial evidence. Our review of the record, however, assures us that there is adequate evidence to support these findings.

With regard to flooding, Appellants claim that the court failed to recognize the problem of flooding at the site caused by a culvert

under the access road to the proposed facility being too small to handle the total flow of storm water and runoff from the site. In its opinion, however, the trial court concluded that the record establishes that Waste Management added detailed storm water management notes to its plan and provided satisfactory assurances that the current storm water system on the site is capable of handling the additional storm water produced by the transfer station. Clearly, the trial court did address the issue and the record supports its findings on this point.

On the issue of site contamination, Appellants argue that the trial court erred in concluding that there was no evidence to suggest that if any contamination remains at the site following a 1989 removal of nine underground petroleum tanks, there is no significant threat to life, safety, health or property. The record supports the conclusion, however, that there is no evidence of the threat of current contamination. Moreover, as found by the trial court, the Pennsylvania Department of Environmental Protection has reviewed Waste Management's plan and has issued a permit for the transfer station.

Finally, Appellants dispute the trial court's finding that there would be no traffic problems created by the proposed plan. The court found that truck traffic generated by the facility would be less than the previous occupant of the site, a trucking terminal, and that the queuing area for trucks in the driveway of the property was sufficient. Despite Appellants' arguments to the contrary, we are satisfied that the court's findings with regard to traffic at the site are supported by substantial evidence.

### Conclusion

The trial court did not abuse its discretion in denying Appellants' motion for hearing to present additional evidence, and did not err as a matter of law in concluding that Waste Management's transfer facility is a permitted use within the Township's I–G zoning dis-

---

7. In so holding, we need not address Appellants' argument that the trial court erred in concluding that the transfer station was also allowable as a "junkyard," under the conditional use provisions

of Section 1404 of the Zoning Ordinance. We do recognize, however, that this Court has previously found a trash transfer station to be a "junkyard." *See Tohickon Valley Transfer, supra.*

trict. Accordingly, we will affirm the trial court's order approving Waste Management's land development plan.

### ORDER

AND NOW, this 14th day of October, 1997, the February 5, 1997 order of the Court of Common Pleas of Cumberland County is hereby affirmed.

LEADBETTER, J., did not participate in the decision in this case.