# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan E. Crivellaro          :

                     :

           v.           : No. 1047 C.D. 2015

                     : Argued: December 10, 2015

Williams Township Zoning Hearing   :

Board                           :

                     :

Appeal of: Board of Supervisors of   :

Williams Township             :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]

                HONORABLE MARY HANNAH LEAVITT, Judge[2]

                HONORABLE P. KEVIN BROBSON, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY

PRESIDENT JUDGE PELLEGRINI          FILED: January 6, 2016


       The Board of Supervisors (Supervisors) of Williams Township (Township) appeals from an order of the Court of Common Pleas of Northampton County (trial court) overruling Williams Township Zoning Hearing Board's (Board) grant of enforcement notices and denial of Susan E. Crivellaro's (Crivellaro) request for a variance to maintain a certain height of a billboard on her property. We vacate and remand.

---

[1] This matter was assigned to this panel before January 1, 2016, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

# I.

## A.

Since 1993, Crivellaro has owned a piece of property situated in the Township, Northampton County, adjacent to Route 78. The property is located in an area zoned Light Industrial/Business Zone and is approximately one acre in size, improved with a single-family residential dwelling and associated structures, as well as a double-sided monopole billboard. Crivellaro lives on the property with her husband, Salvatore Crivellaro (Mr. Crivellaro, collectively, Crivellaros), and their children. Prior to the construction of the billboard at issue, the property was improved in 1987 by a single-sided monopole billboard (Outdoor billboard), owned by Adams Outdoor Advertising (Outdoor Advertising). The Outdoor billboard was removed from the property in 2008.

In early 2009, Mr. Crivellaro met with Richard Adams (Adams),[3] the Township's Zoning Officer, to discuss the erection of the billboard on the property to replace the Outdoor billboard. Subsequently, in May 2009, Crivellaro filed an application for zoning/building permit (application) to erect the billboard, and submitted a building plan (plan) prepared by Outdoor Specialists, a company that specializes in the erection of outdoor advertising signs. The billboard's use was described on the application as, "Replacement of advertising structure as removed June 30, 2008. Replacement being 30 ft [sic] high, double sided board, dimensions of 14 ft [sic] x 48 ft [sic], neutral in color. Shall consist of a monopole, lighted at the bottom, and no other support structures. Replacement expense estimated at

---

[3] Richard Adams is a certified building code official and has been the Township's Zoning Officer since 1999.

$55,000.00[.]" (Reproduced Record (R.R.) at 379a). The plan depicted the top of the billboard as 30 feet above grade.[4]

Base Engineering, the third-party inspection service for the Township, received the plan in June 2009. Upon reviewing the plan, Base Engineering stamped on the plan that it was "approved as submitted," offering no comments. Subsequently, Adams issued a permit for the billboard's construction, which was extended on June 17, 2010, and allowed for the "[c]onstruction/replacement of an existing monopole [b]illboard in compliance with the Williams Township Zoning Ordinance of 1990 [(Zoning Ordinance)] as amended specifically Article XVII, Section 1719, Off-Premise Signs (Billboards) A., B., C., D., E. & F."[5] (*Id.* at 381a.) As Crivellaro did not begin construction before the original permit expired, she applied for and received a six-month extension to the original permit, which stated the same information as the original permit.

Outdoor Specialists then constructed the billboard in accordance with the plan and received approximately $55,000.00 from Crivellaro upon completion. After the billboard's erection, Mr. Crivellaro erected a block wall around the monopole and backfilled behind the wall. In October 2010, Base Engineering visited the site to inspect the completed billboard and prepared a report, raising no issues with the block wall or backfilling.

---

[4] Mr. Crivellaro testified that crosshatching on the plan indicated the erection of a block wall and placement of ten feet of backfill behind the wall in order to increase the grade. (R.R. at 163a).

[5] With regard to billboards, the Zoning Ordinance states, "In no event shall these signs exceed a vertical dimension of 30 feet above the grade of the lot." Zoning Ordinance §1719(B)(4); *see* (R.R at 412a).

After receiving complaints from a neighbor that Mr. Crivellaro removed trees along Route 78, Adams conducted a site visit during which it appeared to him that the billboard was too high. Adams then asked Timothy Edinger (Edinger), the Township Engineer, to measure the height of the billboard and the wall constructed beneath it. In November 2010, Edinger and Maynard Barthol, Edinger's assistant, conducted a site visit and measured the height to be an average of 43.9 feet from the preexisting grade, excluding the backfill, to the top of the billboard, approximately 14 feet above the 30 foot height limitation imposed by the Zoning Ordinance and what was represented to the Township as the height of the billboard. During the site visit, Adams also noticed what he characterized as "earth disturbance" on the property, including the construction of a wall approximately eight feet tall at the base of the billboard, the infilling of earth behind the wall (backfilling), and the construction of a driveway to the billboard.

Adams informed Mr. Crivellaro that a permit was required for the construction of a wall over four feet in height. Mr. Crivellaro then removed some of the wall's building blocks so that the height of the wall did not exceed four feet. Adams also determined that the "earth disturbance" required a grading permit per the Township's Grading Ordinance (Grading Ordinance), which regulates and requires permits for "[e]arth moving and grading, soil disturbance, excavation, and any activity incidental to construction, including, but not limited to addition to existing principal structures, but not limited to, removal of vegetation and/or changes in topography…." (R.R. at 428a).

4

**B.**

On December 2, 2010, Adams issued Crivellaro two enforcement notices and a cease and desist order. One notice informed her that she is in violation of the Zoning Ordinance as her billboard is 43.9 feet from the prior grade where the Zoning Ordinance allows a maximum height of 30 feet. The other notice informed Crivellaro that she is in violation of the Grading Ordinance due to the "large amount" of earth disturbance around the base of her newly constructed billboard, coupled with the fact that she did not apply for and was not issued a grading permit. The second notice instructed Crivellaro to stop all earth moving/grading immediately and comply with the Grading Ordinance. Both notices informed Crivellaro of her appeal rights and notified her that failure to comply or failure to appeal will constitute a violation of the Zoning Ordinance and Grading Ordinance and subject her and her husband to civil penalties. On January 3, 2011, Crivellaro appealed both notices and the cease and desist order with the Board, asking that the Board overturn the notices or, in the alternative, grant variance relief to allow the billboard to remain on the property.

The Board first held a hearing on March 2, 2011, during which Crivellaro argued that the Board failed to hold the hearing within the 60 days as required by Section 908(1.2) of the Pennsylvania Municipalities Planning Code (MPC)[6] and, therefore, there was an automatic deemed approval of her appeal. No evidence was presented regarding the merits of the appeal at both this and a subsequent hearing on October 24, 2011. The Township filed a land use appeal on

---

[6] Act of July 31, 1968, P.L. 805, reenacted and amended by the Act of December 27, 1988, P.L. 1329, *as amended*, 53 P.S. §10908(1.2).

June 27, 2011, from a public advertisement by Crivellaro of a deemed approval.[7] On September 12, 2011, the trial court granted the Township's motion to open the record and ordered a remand to the Board for a hearing to present evidence and testimony relevant to Crivellaro's alleged deemed approval. On October 21, 2013, the trial court denied and dismissed Crivellaro's claim of a deemed approval and remanded to the Board. The Board then held hearings on the merits of the appeal on January 22, February 26, and April 23, 2014.

## C.

Before the Board, Adams testified that based on the plan submitted by Crivellaro that he reviewed, there was no indication that the grade was going to change or that any additional support structure or wall was going to be built around the billboard, and that he did not receive any other zoning- or grading-related plans to review. Adams testified that Mr. Crivellaro's explanation as to why he was building the wall was "[t]o comply with the 30 feet in height. In his opinion, by building the wall up, from the top of the wall to the top of the sign, that would be 30 feet." (R.R. at 19a). Adams explained that during his conversation with Mr. Crivellaro, he had informed him that he did not need a grading permit to dig the hole for the monopole, but would need one if he was going to disturb a "large area" in connection with the billboard's construction or put in a driveway,[8] in which Mr. Crivellaro was interested.

---

[7] The Township acknowledged that the Board is not the proper body with which to appeal the cease and desist order because the Board does not have jurisdiction on that matter.

[8] Adams explained what he would consider as disturbing a large area on cross-examination:

> He is replacing the pole. You've got to give him credit for what was there and was disturbed. That's the way I interpret the [Grading Ordinance]. In other words, if you have a structure that let's say is

**(Footnote continued on next page…)**

He explained that in order for Mr. Crivellaro to put in a driveway or build the type of wall that he had built, he would have had to submit certain information in order to receive permits from the Township, which he never submitted.

On cross-examination, Adams testified that he believed that the plan depicted the same grade as existed when the Outdoor billboard was located on the property. He testified that he did not know what the pre-existing grade was. Adams acknowledged that there were no caveats listed on the permit except that the undertaking would have to comply with the relevant section of the Zoning Ordinance and the description of the work depicted in the application, and that a permit is authorized provided that it does not violate the Zoning Ordinance. However, Adams added, "[Mr. Crivellaro and I] talked about using a driveway. He stated he wasn't going to be using that driveway and he wasn't going to be disturbing any extra area. That's why he got a permit." (R.R. at 43a).

Adams stated that he did not know what the crosshatches on the plan depicted and did not ask for clarification, but he did not think it could be a wall "because there is no wall on there." (R.R. at 45a). He also explained that although the Crivellaros checked off a box on the application indicating that they wanted a

_____

**(continued…)**

> 1,000 square feet and you want to demolish it and build something 2,000 square feet, then the 1,000 square feet would be your earth disturbance because there is already 1,000 feet of earth disturbance. So what was in the ground would not be considered earth disturbance if [Mr. Crivellaro] pulled it out and wanted to put something new in.

(R.R. at 47a).

driveway, and although the Crivellaros used an area on their property to access the property, they never had a valid driveway permit, and he never received the monies or plans required to issue a driveway permit. Adams testified that when he spoke with Mr. Crivellaro about putting in a driveway, "I told him what he needed, and… he said that he was not going to put a driveway in. Therefore, he didn't have to pay all his fees. But he eventually did put a driveway in." (*Id.* at 54a).

Next, Maynard Barthol (Barthol) testified that he and Edinger visited the Crivellaros' property to determine the height of the sign and they measured it from the grade as it existed on the date of the survey, which included the disturbance that was there at the time.[9] He stated that while he was at the property, he saw a wall being built and also evidence of a new billboard's construction, which included "earth disturbance around the sign and around [the] partially constructed wall… [and] bare earth as opposed to lawn vegetation outside of the area…." (R.R. at 57a). He testified that the average sign height was taken by averaging the pre-existing grade and the top of the billboard grade, which was 43.9 feet.[10] Barthol also stated that the crosshatching on the plan could represent either the pre-existing grade or the finished grade.

---

[9] "We did that by setting up the instrument and taking a measurement from the instrument's location to the bottom of the sign. We measured the distance from the survey instrument to the bottom of the sign and also took a vertical angle from that survey position to the top of the billboard. While we were there we also did numerous filed shots to determine the grade and prepared a site plan for the area of the sign." (R.R. at 56a-57a).

[10] Barthol added that the equipment used to measure the billboard's height was checked to insure accuracy.

Edinger testified that the grades were estimated as best as possible, "based on an extrapolation of our basis of [pre-]existing grades, undisturbed grades at the time of the survey." (R.R. at 63a). He added that he had not researched Township records as to topography records from the Outdoor billboard prior to visiting the property. He stated that while he had had an opportunity to examine the plan, the plan did not depict the pre-existing grade and he did not take it with him on his site visit. Edinger further explained that he saw a driveway, next to which a good portion of the area was disturbed, but he could not tell whether the driveway was new or whether it was there before. With regard to the crosshatching on the plan, Edinger explained that crosshatching could be concrete, modified stone or backfill material, but generally not undisturbed earth around the drilling of the hole.[11] He stated that the plan depicts the placement of concrete or backfill over the excavation for the monopole and that the grade line depicts the finished top cover.

Mr. Crivellaro testified that the grade line on the plan represented to him a finished grade line with backfill and it depicted where his 30 feet are. He testified that a 2011 amendment to the Grading Ordinance provided that more than 2,000 square feet could not be disturbed, and, as such, he went out and measured the area

[11] Edinger opined about the crosshatching:

> [I]f you look at the bottom of the pole where the foundation is, you will see that that was poured with concrete. So you're going to have to excavate a hole at least with the diameter of the caisson or the concrete tube going in, and what they put there is the crosshatching. By the way, there is no legend to indicate what exactly it is. But a logical assumption would be that that is either backfilled or maybe even concrete to fill in the top of the excavation.

(R.R. at 65a).

9

that he disturbed where he built the wall and found that he disturbed 720 square feet. He stated that after he was notified by Adams that his wall was too high and that he needed a variance to go higher, he volunteered to stop the construction and took down some of the building blocks to bring the wall into compliance. Mr. Crivellaro acknowledged that the plan makes no mention of the construction of a wall or backfilling in conjunction with the erection of the billboard, but thought of it as "gray area," reasoning that there was nothing else to do with the dirt that comes out of the hole other than to use it as backfill.

Finally, Gregory Ritter and Raymond Ulmer, neighbors of the Crivellaros, testified that the billboard and the wall do not affect their living situations nor does it alter or devalue the neighborhood in any way.

## II.

## A.

The Board upheld the height enforcement notice, finding that because the billboard is an average of 43.9 feet above grade, it exceeds the maximum height permitted by the Zoning Ordinance. The Board reasoned that the Zoning Ordinance's requirement that the maximum height of the billboard be 30 feet above the grade of the lot "must and clearly does refer to pre-existing grade." (Board's Decision, 7/3/14, at 10). Moreover, the Board explained that, "If this Board were to interpret otherwise it would produce a ludicrous result. Specifically, one could avoid the 30 foot height requirement by creating an artificial berm of 20 feet above pre-existing grade and effectively get the sign height to 50 feet above existing grade rather than 30 feet." (*Id.*).

The Board likewise upheld the grading enforcement notice, finding that additional grading was undertaken on the property on top of the pre-existing grade; however, no grading permit was obtained prior to commencing the grading activities.

Finally, regarding the Crivellaros' request for a variance under Section 111.E.3.b of the Zoning Ordinance and Section 910.2(a) of the MPC,[12] the Board found that the Crivellaros failed to establish that they cannot develop the property in strict conformity with the Zoning Ordinance and that variance relief is necessary. The Board noted that there is no evidence that the property has unique physical characteristics preventing it from being developed to comply with the Zoning Ordinance. Specifically, the Board reasoned that the Crivellaros failed to demonstrate why the former billboard was inadequate or why the property's current residential use is inadequate to the point of creating the necessary legal hardship.

**B.**

Crivellaro appealed to the trial court and subsequently filed a motion asking the trial court to hold a *de novo* hearing or remand the case to the Board for another evidentiary hearing on the theory of vested rights and/or equitable estoppel, an issue not raised before the Board, and to present additional testimony in support of the request for a variance. The trial court granted this motion for the evidentiary hearing in order to consider Crivellaro's equitable estoppel arguments. In March 2015, the trial court held a hearing where additional evidence on the variance and vested rights and equitable estoppel was presented. The parties stipulated that the

---

[12] Added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10910.2(a).

11

certified record of the proceedings before the Board would be incorporated into the record of the trial court's proceeding.

## C.

Before the trial court judge, James Richard Hardin (Hardin), the installer of the billboard, a principal and part owner of Outdoor Specialist and owner of Hardin Construction, which specializes in the erection of billboards, testified as an expert with regard to the placement and height of billboards. Hardin testified that the topography of the property is hilly with undergrowth, which affects the viewing ability of the billboard, and that lowering the billboard even by a foot would affect its visibility on the westbound road, blocking it from a vehicle's visibility due to the rolling hill and affecting the billboard's marketability.[13] He further stated that lowering the billboard by ten feet would totally obscure the billboard. With regard to the topography of the land around the billboard from an eastbound road, Hardin testified, again, that while eastbound was not as bad, there is still undergrowth and that if the billboard were any lower, the view would be blocked from the road. He

---

[13] Hardin had done a driving-range distance of the billboard and taken pictures upon which he relied. The pictures were taken 1,400 feet, 14 seconds away and 1,000 feet, 10 seconds away from the billboard. In order to take the pictures, Hardin, at 5'10" height, had pulled in the emergency lane and had gotten out of his truck. His description of what he saw westbound was as follows:

> Well, you can see the undergrowth below it and the trees beside it. And there's not any foliage in them this time of year either. And as you can see, it's already the upper part is what you read, the sheetmetal [sic] above the blue is the portion, forty-eight area that you would read. *And it is just -- just where you can see it.*

(R.R. at 278a).

12

stated that the sign would be better taller from both directions and that as it is, it is very close to being unmarketable.

Hardin also testified about a billboard across Route 78 from the subject billboard with the exact same size face and estimated that that billboard is 55 feet high and, unlike Crivellaro's billboard, which is in the valley, that billboard is elevated on a hill. He also testified that other billboards in the vicinity of the subject billboard all have the same size face but are at different heights based on the topography.

Next, Adams testified that there are no billboards over 30 feet high located in the Township, and that the billboards Hardin testified about are located in the Borough of Glendon. He also testified that the Township has never granted a variance for any off-premise billboard to be over 30 feet high.[14] He testified that the visibility of the billboard, when travelling eastbound, could be seen "very well," and coming westbound, the sign could be seen "pretty well." (R.R. at 310a). He acknowledged that from westbound, if the billboard were to be lowered, its visibility "would probably be obliterated somewhat." (*Id.* at 311a). Adams explained that the Outdoor billboard, which was 30 feet, faced west for eastbound traffic and was readable. He stated that Outdoor Advertising had also applied for a variance to build its billboard higher, which the Board denied. He further stated that the old billboard was in generally the same location as the subject billboard.

---

[14] It was later established during the hearing that, contrary to Adams' recollection, about 14 years ago, a building permit was issued to Outdoor Advertising pursuant to a variance which allowed the erection of a 57 foot high billboard in the Township.

**D.**

The trial court reversed the Board's upholding of the Township's enforcement notices and denial of Crivellaro's variance request and granted Crivellaro's land use appeal. The trial court found that although the billboard has an average height of 43.9 feet from the pre-existing grade, for which the Township appropriately issued the height enforcement notice, the testimony of Hardin established that given the topographical characteristics of the property and the visibility issues that may arise if the billboard is lowered, a variance is necessary to afford relief. The trial court further explained that the Zoning Ordinance designates a billboard as a second principal use, which presupposes that a property already has a principal use; as such, denying Crivellaro the permitted use of a billboard on her property on the basis that it is already being used as a residence is contrary to the intent of the Zoning Ordinance. The trial court also found that there are a couple of other billboards constructed at heights of 55 feet and over within one-half mile of the subject billboard, and allowing the subject billboard to remain at an average height of 43.9 feet will not adversely affect the surrounding area.

With respect to the grading enforcement notice, the trial court found that the soil used to grade around the base of the billboard came from the excavation for the monopole and from stockpiles of dirt elsewhere on the property. The trial court explained that the issuance of the grading enforcement notice was patently unfair as the majority of the earth moving was incidental to the erection of the monopole and Adams had advised Mr. Crivellaro that a permit would not be needed unless a large area was disturbed.

14

Finally, the trial court chose not to address Crivellaro's equitable arguments because it already found that she is entitled to a dimensional variance. This appeal by the Township followed.[15]

## III.

At the outset, the Township contends that the trial court erred in granting Crivellaro's motion to hold an evidentiary hearing pursuant to Section 1005-A of the MPC which provides:[16]

> If, upon motion, *it is shown that proper consideration* of the land use appeal *requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence*, may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence…. *If the record does not include findings of fact or if additional evidence is taken by the court or by a referee, the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any.* (Emphasis added.)

Under this provision, it is within the trial court's discretion whether to take additional evidence. *McGrath Construction, Inc. v. Upper Saucon Township Board of Supervisors*, 952 A.2d 718, 729 (Pa. Cmwlth. 2008). This is not just a change in who decides the matter because it takes away from the Board the power to

---

[15] When the trial court takes additional evidence in an appeal from a Board decision, our standard of review is to determine whether the trial court's decision is supported by the evidence and is free from legal error. *Wilson v. Plumstead Township Zoning Hearing Board*, 936 A.2d 1061 (Pa. 2007).

[16] Added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §11005–A.

hear zoning appeals involving a local zoning ordinance and to render zoning decisions that it was entrusted to make under Section 909.1 of the MPC.[17]

However, just like in other areas, a trial court's discretion in this regard is not absolute. A trial court may be reversed on an abuse of discretion standard[18] if it refused to or allowed additional evidence if the facts show that there was no basis to deny the request to present additional evidence or to allow additional evidence.

For example, it is an abuse of discretion for a trial court to not allow additional evidence (1) where the record is incomplete because a party was denied an opportunity to be heard fully by the zoning board; or (2) where relevant testimony was offered and excluded. *Eastern Consolidation and Distribution Services, Inc. v. Board of Commissioners of Hampden Township*, 701 A.2d 621, 624 (Pa. Cmwlth. 1997).

Conversely, while Section 1005-A of the MPC permits the trial court to make its own findings of fact based on the record below as supplemented by additional evidence, we have held that was an abuse of discretion for the trial court to make such findings where the Board made detailed findings. In *Koutrakos v. Zoning*

---

[17] Added by the Act of December 21, 1988, *as amended*, 53 P.S. §10909.1.

[18] As this Court has explained, "[a]n abuse of discretion is not merely an error of judgment, but, if in reaching a conclusion, the law is overridden or misapplied, or judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by evidence of record, discretion is abused." *Crystal Forest Associates, LP v. Buckingham Township. Supervisors*, 872 A.2d 206, 214 (Pa. Cmwlth. 2005), *appeal denied*, 895 A.2d 551 (Pa. 2006) (citation omitted).

16

*Hearing Board of Newtown Township, Delaware County*, 685 A.2d 639 (Pa. Cmwlth. 1996), we considered what is meant by a record without findings of fact. We explained that it refers to instances where there is an order but no decision, or where there has been a deemed approval, "which normally implies an absence of board findings." *Id.* at 641-42. Otherwise, the trial court is "precluded from making its own findings." *Id.* at 642.

In this case, the basis for Crivellaro's motion for evidentiary hearing or remand to the zoning board petition sought for a hearing stated that:

> a) [Crivellaro] has retained Attorneys Backenstoe and Caffrey to prosecute the within land use appeal on her behalf.
>
> b) [Crivellaro] may be entitled to relief on the basis of the theory of vested rights and/or equitable estoppel, but these theories of relief were not raised in the Application for Relief, in the proceedings before the Board, or in the notice of appeal.
>
> c) The billboard was erected in a different location than the prior billboard on the subject property, and in order for the billboard to be observed by drivers proceeding in both directions on Route 78, it was necessary to erect the billboard at a height which exceeds the maximum height limitation in the WTZO [Whitehall Township Zoning Ordinance]. However, these facts, which may demonstrate the existence of an unnecessary hardship justifying the granting of a variance from the maximum height limitation, were not elicited in the proceedings before the Board.
>
> d) It is well settled Pennsylvania law that facts and theories of relief not presented to a zoning hearing board may not be raised for the first time on appeal. Therefore, in the event that Appellant is not afforded the opportunity to supplement the record and raise the theories of vested rights and equitable estoppel and introduce important facts in support

17

of her request for a dimensional variance, Appellant will be forever barred from doing so.

(Crivellaro's 12/24/14 Motion for Court to Hold Evidentiary Hearing at 3-4).

In its order granting the motion, the trial court explained that it was not remanding the matter to the Board and allowing additional evidence to be entered because:

> Given the attenuated history of this case over the past five years, we find it prudent to hold an evidentiary hearing because a remand to the ZHB will likely further protract an adjudication of this matter. Additionally, present counsel of record entered their respective appearance on behalf of Crivellaro on December 24, 2014 and aver that, after a review of the record, there are meritorious issues pursuant to a vested rights theory and topographical issues regarding the grading of the land in question where a record was not developed by prior counsel. Crivellaro contends that she will be prejudiced if not permitted to develop a record of all theories. Williams Township and the ZHB are unified in opposition to permitting a further record. However, we find no harm to the parties in permitting this landowner the opportunity to fully develop all theories. This rationale is appropriate since there are no other intervenors or parties. *See* 53 PA. STAT. §10908(3).

(Trial Court's 1/14/15 Order at 4-5).

What essentially Crivellaro asked for and what the trial court granted was to add a new theory of relief that was not raised before the Board and allowed Crivellaro a "do over" because she failed to raise facts that were known and could

18

have been presented to the Board. Neither basis is grounds to allow additional evidence to be presented under Section 1005-A of the MPC.

First, as acknowledged by Crivellaro, it is well settled that in zoning cases, issues must be preserved before the zoning board in order for an appellant to pursue on appeal. *Leoni v. Whitpain Township Zoning Hearing Board*, 709 A.2d 999, 1001 (Pa. Cmwlth. 1998). And, as Crivellaro has acknowledged, this issue was not raised below. While Section 1005-A of the MPC may allow additional evidence to be presented where warranted, it does not allow additional issues or facts in support of those issues to be raised. For a trial court to allow additional evidence to support equitable estoppel or vested rights arguments, issues not raised before the Board is an abuse of discretion.

Second, as to allowing the additional testimony of Hardin, the installer of the billboard, there was no showing that he was precluded from testifying before the Board. The only basis appears to be that he should have been called to testify but was not. The Board conducted a number of hearings where Hardin's testimony could have been presented. Failure to present testimony that was available at the time of the Board hearing is not a basis for allowing additional testimony under Section 1005-A, thereby removing from the Board its jurisdiction to render a decision on the requested variance and rendering its decision a nullity. The trial court's findings of fact must be supported by substantial evidence or such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Eastern Consolidation*, 701 A.2d at 623.

Based on the foregoing, we vacate and remand to the trial court to issue a new decision based solely on the record made and the issues raised before the Board.[19]

_____
DAN PELLEGRINI, President Judge

---

[19] Based on our disposition of this matter, we will not at this time address the Township's arguments on the merits.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan E. Crivellaro         :
                        :
        v.            : No. 1047 C.D. 2015
                        :

Williams Township Zoning Hearing  :
Board                      :
                        :

Appeal of:  Board of Supervisors of  :
Williams Township          :

# **O R D E R**

AND NOW, this 6th day of <u>January</u>, 2016, the order of the Court of Common Pleas of Northampton County dated May 22, 2015, at No. C-48-CV-2014-07039, is vacated and the matter is remanded to the trial court for a new decision containing the appropriate factual findings and legal conclusions consistent with this opinion.

Jurisdiction relinquished.

_____
DAN PELLEGRINI, President Judge