624 A.2d 677

**Archie FAULKNER and Dorothy Faulkner, his wife, Appellants**

v.

**BOARD OF ADJUSTMENT OF MOOSIC BOROUGH.**

Commonwealth Court of Pennsylvania.

Argued Dec. 17, 1992.

Decided April 7, 1993.

Gale T. Mayorowski, for appellants.

Edward F.V. Pietrowski, for appellee.

Before COLINS and PELLEGRINI, JJ., and BLATT, Senior Judge.

COLINS, Judge.

Archie and Dorothy Faulkner (the Faulkners) appeal from the April 1, 1992 opinion and order of the Court of Common Pleas of Lackawanna County (Common Pleas) denying their appeal from a "deemed" decision of the Moosic Borough Board of Adjustment (Board).

Alan Goldstein (Goldstein), owner of the subject property and a principal in a Pennsylvania corporation, Star Pipe & Supply, sought a variance permitting Star Pipe & Supply to store steel pipe and supplies on the subject property, despite the fact that it is partially zoned R–2. There appears to be some dispute as to when the Board conducted its hearing on the variance,[1] but there is no dispute regarding the fact that the Board did not issue its decision within 45 days of the hearing. For that reason, pursuant to Section 908(9) of the Pennsylvania Municipalities Planning Code (Code),[2] the Board was deemed to have issued a decision in favor of Goldstein.

The Faulkners, who reside near to the subject property, appealed the deemed decision to Common Pleas. Pursuant to Section 1005–A of the Code,[3] Common Pleas reviewed the Board's record de novo and found the following facts:

1. The Common Pleas opinion states that the Board's hearing was conducted on August 16, 1990; pleadings filed with Common Pleas by Goldstein indicate a date of September 10, 1990; the Faulkners' brief also indicates a date of September 10, 1990.

2. Section 908(9) of the Act of July 31, 1968, P.L. 805, as amended, 53 P.S. § 10908(9), provides, in pertinent part:

The board or the hearing officer, as the case may be, shall render a written decision or, when no decision is called for, make written findings on the application within 45 days after the last hearing before the board or hearing officer.... Where the board fails to render the decision within the period required by this subsection, or fails to hold the required hearing within 60 days from the date of the applicant's request for a hearing, the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time.

3. Section 1005–A of the Code, 53 P.S. § 11005–A, provides, in pertinent part: "If the record does not include findings of fact or if additional

First, the hardship suffered by Mr. Goldstein resulted from the unique physical characteristics of the property. Mr. Goldstein's property is not suitable for residential development since it did not pass a septic perculation test. Moreover, water or sewage hook-ups are not accessible to the property. (N.T. p. 3–4).

Second, the variance would enabled (sic) Mr. Goldstein to make reasonable use of the property.

Third, Mr. Goldstein did not create the hardship.

Fourth, the proposed use will not alter the essential character of the neighborhood. The neighborhood is not a purely residential area because Interstate 81 borders the neighborhood, the Scranton/Wilkes–Barre International Airport is within one mile and until recently, the area had been zoned industrial. The Faulkner's [sic] opposed the variance because they claim truck traffic would increase and they did not want pipes in front of their home. The testimony refuted these claims. Chairman of the Board, Mr. Domenick, made an on-site investigation and found that only one truck per week would frequent Star Pipe & Supply and it would not pass the Faulkner property. Mr. John Kobeski also made an on-site inspection. He found that he could not see the Goldstein property from the Faulkners' home. Therefore, we believe the essential character of the neighborhood would not change.

Fifth, the variance at issue would be the least the regulation can be modified. Again, the property cannot be used for residential or commercial building because it will not perc and has no access to sewer or water. Without essential services, the property would be best utilized for storage purposes. The use would represent the minimum modification of the regulation and the least modification to the land.

■ The Faulkners raise the following issue for this Court's review: "Should a commercial variance be granted without a decision by the Board of Adjustment when the variance is to

evidence is taken by the court or by a referee, the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any."

be applied in an R–2 zone and the Appellee failed to show necessary hardship and that the variance would adversely affect the health, safety and welfare of the general public." Traditionally, we have described our scope of review as follows:

> Our scope of review in zoning cases depends on whether the trial court considered additional evidence that was not before the Board. If the trial court did not hear the matter *de novo,* our scope of review is limited to a determination of whether the *Board* abused its discretion. However, if the trial court heard the matter *de novo,* we are limited to a determination of whether the *court* below committed an abuse of discretion or error of law.

*Eibs v. Zoning Board of Adjustment, City of Pittsburgh,* 117 Pa.Commonwealth Ct. 57, 60, 542 A.2d 641, 643 (1988). In this case of first impression, we hold that our scope of review in an appeal from a common pleas court's de novo review of a deemed decision of a zoning hearing board is limited to a determination of whether the common pleas court committed an abuse of discretion [4] or an error of law. As noted previously, in footnote 3 of this opinion, when a deemed decision of a zoning hearing board is appealed to a common pleas court, the common pleas court is the fact-finder.

> To establish entitlement to a variance, a property owner must prove that a zoning ordinance imposes an unnecessary hardship because of unique physical conditions peculiar to the property, and not by conditions generally created by the zoning ordinance in the neighborhood; the physical conditions prevent the property from any reasonable use; the unnecessary hardship is not self-inflicted; the requested variance will not destroy the character of the neighborhood; and the variance represents the least possible modification

---

4. "We may conclude that the Board abused its discretion only if its findings are not supported by substantial evidence. . . . By 'substantial evidence' we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 555, 462 A.2d 637, 640 (1983) (citations omitted).

of the ordinance. Section 910.2 of [the Code], ... 53 P.S. § 10910.2....

*Isaacs v. Wilkes–Barre*, 148 Pa.Commonwealth Ct. 578, 582–83, 612 A.2d 559, 561 (1992).

The Faulkners essentially argue that Goldstein failed to meet his burden of proving unnecessary hardship. Our review of the record reveals that Goldstein met his burden. His testimony and that of the Board, based on Board members' site inspections,[5] provide substantial evidence to support Common Pleas' findings of fact.

Accordingly, the April 1, 1992 order of the Court of Common Pleas of Lackawanna County is affirmed.

## ORDER

AND NOW, this 7th day of April, 1993, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter is affirmed.

---

5. The Faulkners have not alleged any violation of Section 908(8) of the Code, 53 P.S. § 10908(8) which provides, in pertinent part, that a zoning hearing board "shall not inspect the site or its surroundings after the commencement of hearings with any party or his representative unless all parties are given an opportunity to be present." We will, therefore, assume that the Board members' site inspections were proper. *Valley View.*