644 A.2d 281

**In re Minor Subdivision of Kenneth F. MANN
and Patricia A. Mann, Appellants,**

v.

**TOWNSHIP OF FORKS.**

Commonwealth Court of Pennsylvania.

Argued May 9, 1994.

Decided June 17, 1994.

Carol J. Weaver, for appellants.

Karl H. Kline, for appellee.

Before DOYLE and NEWMAN, JJ., and NARICK, Senior Judge.

NEWMAN, Judge.

Kenneth F. Mann and Patricia A. Mann (the Manns) appeal from an order of the Court of Common Pleas of Northampton County (trial court) which dismissed their land use appeal and affirmed the decision of the Board of Supervisors of Forks Township (Supervisors) denying their application for minor subdivision approval.

The Manns are the owners of 5.209 acres of land located at 3520 North Delaware Drive in Forks Township (Township). The structure which currently exists on the property is used by the Manns as their residence and as a professional office for Mr. Mann's engineering firm.[1] The focus of this appeal is a drainage ditch which runs through the center of the Mann property.

In 1991, the Manns decided to subdivide their property into two parcels and to build a residential dwelling on the newly created lot. As such, the Manns filed an application for minor subdivision approval on April 25, 1991.

Bradley C. Miller, the Township's engineer, reviewed the application for compliance with the Township's Subdivision and Land Development Ordinance, Ordinance No. 197 (Ordinance). Based upon his review, Miller determined that a drainage easement was required pursuant to Section 9.2(j)(2)(c) of the Ordinance. The community planner for the Joint Planning Commission of Lehigh–Northampton Counties similarly reviewed the application and concurred with Miller's recommendation. The Manns objected, asserting that the drainage easement would prevent them from further subdividing and developing their land.

1. In 1981, the Township's Planning Commission gave the Manns permission to develop this structure as a professional office.

Thereafter, a site inspection was made by Miller, the Township's superintendent and a representative of the Northampton County Soil Conservation District. Based upon the inspection, these parties agreed that a drainage easement was required.

On September 12, 1991, the Township's Planning Commission unanimously voted to recommend that the Super-isors deny approval of the proposed subdivision due to the Manns' refusal to grant a drainage easement. The Supervisors on September 26, 1991 granted the application approval on the condition that the Manns agree to the drainage easement. The Manns refused to accept the condition, and application for the subdivision was denied.

The Manns appealed to the trial court, and a *de novo* hearing was conducted on May 16, 1993. According to a report prepared by the Manns' engineer, the subject ditch contains a 33–inch diameter concrete culvert, and the drainage area of the ditch consists of 31 acres (an area of 28.7 acres west of the Manns' property, and an area of 2.3 acres on the Manns' property). The report further explained that the runoff time of the drainage area is approximately 28.8 minutes, and the resultant peak discharge from a 25–year frequency storm would be 42.5 cubic feet per second, amounting to 340 gallons per minute.

According to the calculations of the Township's engineer, however, the drainage area of the ditch consists of 182 acres. The Township's engineer further indicated that the volume of water flowing through the ditch is so great that a 39–inch reinforced concrete pipe conveys water onto the Mann property from other upstream lands to the west.

Because of the size of the drainage area and the volume of the water carried by the ditch, the trial court held that the ditch constitutes a minor stream under the Ordinance for purposes of designating a drainage easement. The trial court further held that the Supervisors properly conditioned their subdivision approval on the Manns' granting of a drainage easement to the Township. Accordingly, the trial court en-

tered an order on August 31, 1993, denying the Manns' appeal and affirming the decision of the Supervisors. On October 31, 1993, thirty-one days after the entry of the trial court's order, the Manns filed a notice of appeal with this court.[2]

 The sole issue presented on appeal is whether the trial court erred in holding that the Manns were required to grant a drainage easement to the Township as a condition of subdivision approval.[3]

As a preliminary matter, we note that Section 9.2(j) of the Ordinance provides, in pertinent part, as follows:

(1) Drainage easements[4] shall be provided adjacent to . . . streams . . . as required by the Planning Commission or Board of Supervisors. No structure shall be located within these easements, (examples: no pools, fences, decks, sheds, etc.)

(2) Drainage easements shall be a minimum width of . . .

c) fifty (50') feet from the center of minor stream and one hundred (100') feet from center of major streams.

§ 9.2(j)(1) and (2)(c) (footnote added).

With respect to this section of the Ordinance, the Manns do not dispute that a municipality may condition its approval of a subdivision or land development on a landowner's grant of a

2. Subsequent to the Manns' filing of an appeal, the Township filed a motion to quash the appeal as untimely. On December 1, 1993, this court entered an order dismissing the appeal as untimely filed. However, by order dated December 7, 1993, this court vacated its previous order and reinstated the Manns' appeal. In so doing, our court relied upon the fact that the trial court's decision, although entered on August 31, 1993, was not mailed until September 8, 1993, and that pursuant to Pa.R.A.P. 108(b), the Manns' notice of appeal was timely filed as of October 1, 1993. The Township filed an application for reargument, which this court denied.

3. Where the trial court conducts a *de novo* hearing, our court's scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *Faulkner v. Board of Adjustment of Moosic Borough*, 154 Pa.Commonwealth Ct. 616, 624 A.2d 677 (1993).

4. The Ordinance defines a drainage easement as "[a] right granted by a land owner to a grantee, allowing the use of private land for storm water management purposes." App. A at 6.

drainage easement. *See* Section 503 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10503(2)(iii) (a municipality's subdivision and land development ordinance may include provisions to ensure that adequate easements or rights of way are provided for drainage). Rather, the Manns assert that the trial court erred in its conclusion that the subject ditch constitutes a stream as defined by the Ordinance.[5]

The Ordinance defines "stream" as "[a] water course." Appendix A at 17. A "water course" is defined by the Ordinance as:

> [a] discernable, definable natural course or channel along which water is conveyed ultimately to streams and/or rivers at lower elevations. A watercourse may originate from a lake or underground spring(s) and be permanent in nature or it may originate from a temporary source such as runoff from rain or melting snow.

Appendix A at 21.

In support of their position that the trial court erred in holding that the ditch at issue constitutes a stream, the Manns assert that the amount of water carried by the ditch is not "discernible." [6] Moreover, the Manns maintain that in order for a ditch to constitute a stream, "more is required than water which may or may not appear at somewhat lengthy intervals along a ditch created years ago by the placement of a culvert pipe." Appellants' Brief at 9. We disagree.

A reading of the plain language of the Ordinance indicates that the source of a watercourse need not be permanent, as in the case of a lake or underground spring, but may be temporary, as in the runoff from rain or melting snow. Therefore, a

---

**5.** It is the Manns' position that the ditch running through their property is properly categorized as a "swale." While the Ordinance does not define swale, Webster's Third New International Dictionary 2305 (1986) describes it as "an elongated depression in land that is at least seasonally wet or marshy, is usually heavily vegetated, and is normally without flowing water."

**6.** In this regard, the Manns refer to Mr. Manns' testimony that he has never seen any water in the ditch during the many years that he has owned and resided on the property.

watercourse does not necessarily flow at all times, and a drainage easement is nonetheless required where the course, such as the ditch at issue, occasionally carries a large volume of water.

Although the Manns' assert that the "most credible" testimony and documentation of their experts clearly establish that the ditch does not meet the definition of a stream, the Township counters, and we agree, that even by the Manns' own calculations, the trial court's conclusion is supported by the evidence.

We note that in reaching its decision, the trial court expressly gave consideration to the size of the drainage area and the volume of water carried by the ditch. Although the Manns do not agree with the Township that the ditch in question drains 182 acres of land, their expert admitted on cross-examination to the following: (1) the drainage area of the ditch consists of at least 31 acres; and (2) the peak flow through the ditch during a 25–year frequency storm would be at least 340 gallons per minute. Notes of Testimony of March 16, 1993 at 22.

Moreover, while the parties do not agree as to the size of the pipe (33 inches versus 39 inches), this divergence in opinion does not change the fact that the volume of the water flowing through the ditch is so great that the existence of a pipe is required to convey water onto the Manns' property from other upstream lands to the west. As such, we conclude that substantial evidence exists in the record to support the trial court's conclusion that the ditch in question constitutes a stream.

Last, the Manns assert that the trial court incorrectly stated that their property is zoned rural residential, when in fact it is zoned high density residential. It is the Manns' position that the trial court's decision should be reversed for this reason alone. We disagree. Our review of the Ordinance indicates that its drainage easement requirements apply equally to land in both districts. Therefore, for purposes of this appeal, the zoning classification is irrelevant.

162

Based upon the foregoing analysis, we conclude that the trial court did not err in holding that the Manns were required to grant a drainage easement to the Township as a condition of subdivision approval. Accordingly, we affirm the trial court's order.

## ORDER

AND NOW, June 17, 1994, the order of the Court of Common Pleas of Northampton County in the above-captioned matter is affirmed.