## Millersville University v. Millersville Borough Zoning Hearing Board

C.P. of Lancaster County, no. CI-05-05950.

*James H. Thomas,* for appellant.
*Neil L. Abert,* for appellee.

CULLEN, *J.,* August 18, 2006—On July 13, 2006, Millersville University filed a notice of appeal to the Commonwealth Court from this court's order of June 29, 2006, denying the university's request for a variance and a special exception. Accordingly, this opinion is filed pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure. The relevant procedural background is set out in the court's opinion and order of June 29, 2006.

## DISCUSSION

In its statement of matters complained of on appeal, the university raises three primary issues: (1) whether certain findings of fact made by the court constitute an

abuse of discretion or an error of law; (2) whether the court erred in denying the university's request for a variance; and (3) whether the court erred in denying the university's request for a special exception. The standard of review applicable to these claims is as follows.

Where a trial court does not take additional evidence as permitted by 53 P.S. §11005-A, an appellate court normally reviews the zoning hearing board's decision to determine if it committed an error of law or abused its discretion. *Eastern Consolidation & Distribution Services v. Board of Commissioners,* 701 A.2d 621, 623 (Pa. Commw. 1997) (citing *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 554, 462 A.2d 637, 639 (1983)).

Where the trial court does not take additional evidence but makes its own findings of fact based on the record before the zoning hearing board pursuant to 53 P.S. §11005-A, an appellate court must examine the trial court's decision, not the board's, for evidentiary support. *Id.* (citing *Koutrakos v. Zoning Hearing Board,* 685 A.2d 639, 642 (Pa. Commw. 1996)). The scope of review then becomes "whether the trial court committed an abuse of discretion or an error of law." *Id.* (citing *Faulkner v. Board of Adjustment,* 154 Pa. Commw. 616, 619, 624 A.2d 677, 679 (1993)). An appellate court may determine that the trial court abused its discretion "only if its findings are not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 555, 462 A.2d 637, 640 (1983)). If the record demonstrates such substantial evidence, then the appellate court is bound by the findings of fact made by the

trial court. *Macioce v. Zoning Hearing Board,* 850 A.2d 882, 887 n.9 (Pa. Commw. 2004).

## 1. *Whether Certain Findings of Fact Made by the Court Constitute an Abuse of Discretion or an Error of Law*

The university raises 13 issues regarding the court's findings of fact. These issues are labeled by the university as letters "a" through "m."

In its issue labeled "a," the university argues that findings of fact numbers 31, 32, 36 and 38 are deficient because baseball fields are a permitted use under the zoning ordinance and the university's application was not for a baseball field, but rather to remove buildings. This argument, however, fails to raise a claim that the findings of fact are not supported by substantial evidence. On the contrary, an examination of the record reveals that the findings of fact correctly state that the application did not contain all of the information required by the ordinance.

Further, the ordinance classifies the area including the houses at issue as a Historic Preservation Overlay District. Zoning Ordinance, September 23, 2003 at §309; Zoning Map, September 23, 2003 at 1-2. In order to demolish a building within this district, the university must demonstrate compliance with section 309(D) of the ordinance. Zoning Ordinance, September 23, 2003 at §309(D). Section 309(D)(2) specifies that an application for demolition of a historic building must comply with the requirements of section 103(D). *Id.* at section 309(D)(2). Neither section 309 nor section 103 exempts from its requirements applicants whose proposed structures

would otherwise be permitted by the underlying R1A Residential/University District. The findings of fact at issue merely state that the university failed to fully meet the requirements of section 103 of the ordinance.

The university's contention that it did not have to comply with all of the provisions of the ordinance because its application was only to demolish buildings and not to construct a baseball field is undercut by the language in its application. On page 1 of its application, the university designates that its proposed use is "Houses to be removed for new baseball field." Zoning Hearing Board application, March 31, 2005 at exhibit A-2. Similarly, on page 1 of its supplemental form, the university states: "The four properties are vacant buildings that were previously used as single family dwellings. We request permission to demolish all four to construct a baseball field along N. Prince Street on several parcels that include these four." *Id.* On page 3 of the supplemental form, the university describes that the "intended use of the properties on which these houses sit is a baseball field," that the character of the structure to be constructed is a "baseball field and grandstands," and that an "outfield fence will be on the southern part of the property." *Id.* The university also submitted site plans that depict a baseball field.

Numerous witnesses for the university testified before the Millersville Borough Zoning Hearing Board as to the construction of a baseball field, and the language of the zoning ordinance specifically requires consideration of proposed structures. *Id.* at exhibit A-29; N.T., May 11, 2005 at 77, 91, 95-121, 123, 125-29, 132-33, 137-38, 142, 154-58, 156-68; Zoning Ordinance, September 23, 2003 at sections 309(D)(4)(e), 103(D). Under these cir-

cumstances, the court could not view the application without properly considering the planned use as a baseball field.

As the university's application did not comply with sections 103(D)(4)(b)(1), 103(D)(4)(b)(2), 103(D)(4)(f), and 103(D)(4)(h), the court correctly noted these deficiencies in its findings of fact.

In its issue labeled "b," the university states: "Finding of fact number 46 suggests that the university's structural engineer's reports did not comply with the requirements of the ordinance because they did not contain a 'structural analysis.'" Concise statement of matters complained of on appeal at 2.

This issue fails to assert a claim that the finding of fact is not supported by substantial evidence, but rather demonstrates that the university merely disapproves of the language that the court used to frame the finding of fact. While the university may not view the language favorably, its disapproval does not make the finding of fact erroneous.

Section 309 of the ordinance requires that an application for demolition of a historic building include "a report from a structural engineer describing the structural condition of the building proposed to be demolished, removed or relocated." Zoning Ordinance, September 23, 2003 at section 309(D)(2)(b). The university submitted reports from a structural engineer, Steven Strock, with its application. Zoning Hearing Board application, March 31, 2005 at exhibit A-44—A-47. On cross-examination before the board, Mr. Strock was asked by a member of the board: "I know the answer to this question, but I want to get it on the record, that you did the structural analy-

sis." N.T., May 11, 2002 at 67. Mr. Strock responded: "It was—a visual review of the properties. It's not a structural analysis." *Id.* The board member questioned: "But you also work for the college." *Id.* Mr. Strock answered: "Yes, I do." *Id.* This evidence was accepted by the court and summarized in findings of fact numbers 44 through 46. *Millersville University v. Millersville Borough Zoning Hearing Board,* no. CI-05-05950, op. and order at 13 (C.C.P. June 29, 2006). These findings of fact accurately reflect the evidence presented to the board and should not be disturbed on appeal.

In its issue labeled "c," the university asserts that finding of fact number 61 is in error because the application includes a letter to a zoning officer that complies with section 309(D)(2)(f) and section 309(D)(2)(g) of the ordinance. Those sections provide that an application to demolish a historic building include the "proposed disposition of materials" and a "time line for implementation of proposed use for the property." Zoning Ordinance, September 23, 2003 at sections 309(D)(2)(f)-(g). The letter that the university sent to a William E. Nace, a zoning officer, provides in pertinent part as follows:

"As a supplement to the application, the following information is also being provided: (see section 309.D.2) . . .

"(f) The disposition of materials will be to approved facilities including landfills.

"(g) The time line for the development of the athletic fields will begin upon approval of the special exception. The university plans a continuous pursuit of the project." Zoning Hearing Board application, March 31, 2005 at exhibit A-2.

While this letter mentions the disposition of materials, it hardly provides the information that the ordinance contemplates. The very nature of a demolition project entails the disposal of materials to facilities, including landfills. If such a statement fully provided the information that the governing body intended when it drafted the ordinance, then the requirement that the application discuss the proposed disposition of materials would be superfluous. This incongruity was recognized by the court which determined that the limited information provided by the university did not fulfill the requirements of the application process. Finding of fact number 61 reflects this determination and is supported by the record and the ordinance.

Similarly, the university's time line for the "proposed use of the property" is incomplete. Zoning Ordinance, September 23, 2003 at sections 309(D)(2)(g). While demolition of the buildings may begin upon approval of the special exception, the proposed construction of the field will not begin for an unstated amount of time. Construction may begin within weeks, months, or even years. The court, therefore, stated in its finding of fact number 61 that the university failed to satisfy the requirements of the ordinance, a determination that is supported by the record.

In its issue labeled "d," the university concedes that finding of fact number 72 is accurate. Since this finding of fact is admittedly supported by the record, it should not be disturbed on appeal.

The university contends in its issue labeled "e" that it satisfied the requirements of section 309(D)(2)(1) of the ordinance. That section requires an application to spec-

ify the "form of ownership or operation of the property, whether sole proprietorship, for-profit or nonprofit corporation, limited partnership, joint venture, or other." Zoning Ordinance, September 23, 2003 at section 309(D)(2)(1). The university's application designates that it owns the properties, but does not specify the form of ownership. Zoning Hearing Board application, March 31, 2005 at exhibit A-2. Although most universities are nonprofit corporations, some are for-profit corporations or other entities. Under the ordinance, the university should have included this information in its application. Finding of fact number 72 reflects this deficiency.

In its issue labeled "f," the university claims that finding of fact number 86 is in error. This assertion is contrary to the testimony before the board. Arthur Dickinson, the director of Capital Construction and Design for the university testified that renovation of the buildings would be extremely costly and economically unfeasible and that the cost would come close to matching the appraised values of the buildings. N.T., May 11, 2005 at 79-80; *Millersville University v. Millersville Borough Zoning Hearing Board,* no. CI-05-05950, op. and order at 21 (C.C.P. June 29, 2006). On cross-examination, the following exchange took place.

"Mr. Doran: . . . Did you do, like, a cost analysis or something or have somebody come in and give estimates on what it might cost to repair what we were talking about, some of the reports?

"The Witness: No. I mean, we—the facilities department sits down and does estimates, you know, all the time about repairs that we have to do, not only in the larger buildings on the campus, but also on the smaller

houses on—you know, on George Street, as well as West Cottage, as well as on Frederick Street.

"Mr. Doran: So do you have some numbers for each one of these, if I read them down, what we're talking about here or—

"The Witness: No. I didn't—

"Mr. Doran: Is there anything done on those?

"The Witness: I did not do—

"Mr. Doran: Okay. Okay.

"The Witness: —exact estimates, no." N.T., May 11, 2005 at 83.

Mr. Dickinson admitted that although his department makes estimates all the time, he did not do so for the buildings in question. *Id.* The court accepted this testimony as accurate and reflected its determination in finding of fact number 86.

The university asserts in its issue labeled "g" that findings of fact numbers 88 and 91 are in error. While the university concedes that finding of fact number 88 correctly states the witness' testimony, it contends that other testimony evidences that moving the baseball field would incur the loss of another field, would place the university in violation of title IX, and would raise safety issues for the university. In other words, the university does not claim that the finding of fact is unsupported by the evidence, but rather wishes that the court would have included other information which it views as more favorable to its position. The court resolved issues of credibility and conflicting testimony in making its findings of fact without regard to whether the evidence tends to bolster or harm a party's case. Findings of fact numbers

88 and 91 are adequately supported by the evidence and, thus, should not be disturbed on appeal.

Information about the potential loss of another field which the university argues should have been included in the findings of fact is contained in number 91. That finding of fact states: "On cross-examination, Ms. Rydell admitted that the baseball field could be constructed elsewhere and the buildings preserved, but that decision would restrict the university to only constructing the baseball field and one other field, as opposed to the four fields that its master plan currently shows." *Millersville University v. Millersville Borough Zoning Hearing Board,* no. CI-05-05950, op. and order at 22 (C.C.P. June 29, 2006); N.T., May 11, 2005 at 142, 157-58.

The remaining information which the university argues should have been included in the findings of fact is irrelevant. While the court sympathizes with the university's difficulties in complying with title IX, the surrounding community cannot be made to bear this burden for the university. Further, the landscape architect that designed the baseball field, Mr. Sproles, discussed possible safety issues in connection with the size of a wall that would be needed in order to construct the field in its proposed location and still retain the buildings. N.T., May 11, 2005 at 113-15. There was little other testimony regarding this subject, and finding of fact number 88 reflected Mr. Sproles' opinion that a wall could be built and the baseball field located farther west. *Millersville University v. Millersville Borough Zoning Hearing Board,* no. CI-05-05950, op. and order at 21 (C.C.P. June 29, 2006); N.T., May 11, 2005 at 115-16. As the record lacked evidence about the safety issues of a field located

farther west, the court did not include this information in its findings of fact.

In its issue labeled "h," the university contends that finding of fact number 93 is inaccurate and contains a conclusion. The university, however, does not specify what about number 93 is incorrect, and this court is unable to perceive any inaccuracy or an inappropriate conclusion.

Section 309 of the ordinance requires an applicant to provide credible evidence that "adaptive reuse opportunities do not exist due to constraints related to the buildings proposed to be demolished, removed or relocated or the lot on which it is located." Zoning Ordinance, September 23, 2003 at section 309(D)(4)(d). During the hearing, a member of the board explained that the term "adaptive reuse opportunities" refers to the renovation of buildings from their current use into a new use. N.T., May 11, 2005 at 86-87. For example, in this case an adaptive reuse opportunity would be renovating the buildings which were once permanent residences for community members into temporary housing for graduate students. *Id.* at 87. This potential to adaptively reuse a building involves an analysis of the cost of renovating the building from one use into another use. *Id.* at 86. Mr. Dickinson testified for the university as to adaptive reuse opportunities. *Id.* at 86-87, 90-92. On redirect examination, the university questioned Mr. Dickinson and the following dialogue took place. *Id.* at 90-92.

"By Mr. Thomas: . . . Does—the fact that these four buildings sit at 135 to 205 North Prince Street, do—those lots, are they a constraint to adaptive use of the buildings?

"A. Well, the—the property for R1A use, okay, is—those properties sit within that framework. Okay? The permitted use for fields, which was in our master plan, is what we want to use those buildings for. If we put—if we make them residential property then we can't do what we intended to do with the property.

"Q. So the lots are a constraint to what you—

"A. That's—

"Q.—wanted to do?

"A. That's correct.

"Q. Now, you were asked in some detail about cost. And if I understand correctly, you made a general estimate about costs and determined that it was not feasible to use these as residential buildings.

"From the university's perspective, is its cost impacted by protocols like the state procurement and construction policies?

"A. Well, again, I'm not really in a position to answer that question. You'd have to ask Dr. Rydell.

"Q. If the state—if the university were to try to do construction, would it be bound to use, for example, prevailing wage as a state organization?

"A. In most cases, yes. If we did them in—over a certain dollar figure, we would have to use prevailing wages.

"Q. Do you know what that—

"A. Yeah. That's 25,000.

"Q. So all of these would involve more than 25,000, based on your estimates, and would involve prevailing wage.

"A. That is correct.

"Q. And is that another constraint on fixing up these buildings?

"A. Yes, it is." *Id.*

The court found Mr. Dickinson's testimony to be an accurate assessment of the university's position regarding adaptive reuse opportunities. As the potential for such opportunities is an element required by the ordinance, the court summarized Mr. Dickinson's testimony and framed it as finding of fact number 93. Any language that may suggest a conclusion only highlights Mr. Dickinson's opinion and testimony as opposed to a determination by the court. Since finding of fact number 93 is substantially supported by the record, it should not be disturbed on appeal.

In its issue labeled "i," the university argues that finding of fact number 97 is not relevant to Mr. Strock's testimony and should not have been included in the court's opinion and order. This argument, however, fails to state a claim that the finding of fact is not supported by substantial evidence. For this reason alone, number 97 should not be disturbed.

Further, the record clearly indicates that finding of fact number 97 is relevant. Mr. Strock testified as to his opinion whether demolition of the buildings would adversely affect the historic significance or character of the neighborhood. N.T., May 11, 2005 at 47, 55. Whether Mr. Strock has the qualifications necessary to render such an opinion has probative value. Such qualifications or the lack thereof tends to make the existence of an adverse affect on the historic character of the community more or less probable and, therefore, the challenged finding of

fact is relevant as it states: "Mr. Strock has not had any training in historic structures or historic preservation." See Pa.R.E. 401 (defining relevant evidence); *Millersville University v. Millersville Borough Zoning Hearing Board,* no. CI-05-05950, op. and order at 23 (C.C.P. June 29, 2006).

In its issue labeled "j," the university asserts that finding of fact number 107 "mischaracterizes Mr. Strock's testimony" and that no evidence was presented "that the buildings were deteriorating from vandalism or weather damage while owned by the university." Concise statement of matters complained of on appeal at 4.

Finding of fact number 107 accurately reflects Mr. Stock's testimony. In his structural reports, Mr. Strock described the poor condition of the buildings. Zoning Hearing Board application, March 31, 2005 at exhibits A-44—A-47. On direct examination, the following testimony occurred.

"Q. During the time that the university owned these buildings, did it do anything to allow the buildings to get into the condition that you described in your structural condition report?

"A. As far as 139 goes, I believe so, yes.

"Q. What did you do there?

"A. I believe the fire department used that property.

"Q. So the Millersville Fire Department used that for some training exercises?

"A. Yes.

"Q. But other than that, the condition of the buildings are pretty much the way they were when the University purchased them.

"A. Yes." N.T., May 11, 2005 at 51.

If Mr. Stock's testimony ended there, the university may be correct that number 107 could be in error; however, Mr. Strock elaborated upon the university's care of the buildings on cross-examination. Mr. Strock was asked: "Did the university do anything to protect the properties against vandalism or weather damage or anything?" *Id.* at 53. He responded, "Not that I know of." *Id.* Also during cross-examination, Mr. Strock was asked: "Do you feel leaving the properties vacant for two to three years with no heat in there, you know, through the winters, that this helped contribute to any of the conditions you're talking about not being . . . ." *Id.* at 65-66. He answered:

"The Witness: They're saying they were heated for part of that time. 205 is—I'm sorry, 135 is still heated, actually. 205 is still heated. 139 and 203 are not. Some of the damage, no. It had more to do with other things. But I'm sure some of it is. I'm sure it's some of both." *Id.* at 65-66.

The court accepted this testimony as credible evidence of the university's actions toward the buildings and fully expressed this testimony in finding of fact number 107.

In its issue labeled "k," the university argues that, even if its application was deficient, such deficiency does not justify a denial of its request for a special exception.

This claim does not challenge a finding of fact. The court noted that the university's application failed to provide all of the information required by the ordinance. *Millersville University v. Millersville Borough Zoning Hearing Board,* no. CI-05-05950, op. and order at 32

(C.C.P. June 29, 2006). The court's denial of the request for a special exception was based upon its conclusion that the university failed to demonstrate that it met the specific requirements and standards applicable to a special exception. *Id.* at 33-45.

The university observes in its issue labeled "1" that "the findings of fact are not findings of fact; rather, they are summaries of certain portions of testimony." Concise statement of matters complained of on appeal at 4.

While there is no requirement that specific evidence be cited to support each finding of fact, the court chose to frame its findings with reference to evidence in the record. See *Taliaferro v. Darby Township Zoning Hearing Board,* 873 A.2d 807, 816 (Pa. Commw. 2005) (concluding that evidence does not have to be cited). In this regard certain findings either summarize or directly quote portions of evidence that the court found credible and pertinent to the issues involved. Since the findings of fact represent the court's resolution of factual questions and support its reasoning, they should not be disturbed on appeal. See *Eastern Consolidation & Distribution Services v. Board of Commissioners,* 701 A.2d 621, 623 (Pa. Commw. 1997) (explaining the standard of review applicable to findings of fact).

In its final issue challenging the court's findings of fact, the university contends that other findings could have been made to support the conclusion that the university complied with the specific requirements of the ordinance. The university, however, does not cite any evidence that would support such a conclusion, and based on its review of the record, the court determined that the university failed to comply with the ordinance. Under

these circumstances, the university's argument lacks merit.

## 2. *Whether the Court Erred in Denying the University's Request for a Variance*

The university raises one issue labeled "a" regarding the denial of its request for a variance. In this issue, the university asserts that the zoning officer suggested it request a variance from the requirement of providing an appraisal for the property located at 203 North Prince Street, that its application was never rejected as incomplete, and that it presented substantial evidence on the value of the property.

There is no evidence to support the university's claim that a zoning officer suggested that it apply for a variance. Even if, for the sake of argument, one assumes that the university's assertions are correct, they still do not support the conclusion that the university is entitled to a variance. The court set forth its reasons for denying the variance at pages 28 through 31 of its June 29, 2006 opinion and order, and the issue does not require further discussion.

## 3. *Whether the Court Erred in Denying the University's Request for a Special Exception*

In its first issue, labeled "i," the university contends that the court committed an error of law in determining the university's application did not comply with the requirements of the ordinance. The university argues that it did not have to comply with all of the provisions of the ordinance because a baseball field is a permitted use that does not require a special exception.

The university submitted an application to the board requesting a special exception to demolish four buildings to construct a baseball field. See *supra* p. 301; Zoning Hearing Board application, March 31, 2005 at exhibit A-2. Section 309(D)(2) of the ordinance requires that an application include the information required by that section and section 103(D). Zoning Ordinance, September 23, 2003 at section 309(D)(2). Neither section exempts from its requirements applicants whose proposed structures would otherwise be permitted by the underlying R1A Residential/University District. *Id.* at section 309(D)(2) and section 103(D). The court, therefore, did not err in determining that the university failed to comply with the application requirements contained in the ordinance.

In its issue labeled "ii," the university argues that the court committed an error of law in concluding that the university "did not establish its proposal as one which the legislature expressly designated to be appropriate and as one which is presumptively consistent with the health, safety, and general welfare of the community." Concise statement of matters complained of on appeal at 4 (citing *Millersville University v. Millersville Borough Zoning Hearing Board,* no. CI-05-05950, op. and order at 33 (C.C.P. June 29, 2006)). To support its argument, the university asserts that baseball fields are permitted by right under the zoning ordinance.

While the construction of a baseball field may be permitted by the underlying R1A Residential/University District, the ordinance classifies the area including the buildings as an Historic Preservation Overlay District. Zoning Ordinance, September 23, 2003 at sections 301(D)(4), 309; Zoning map, September 23, 2003 at 1-2. In such a district, buildings may not be demolished, re-

moved, or otherwise relocated unless the zoning officer grants a special exception. Zoning Ordinance, September 23, 2003 at §309(D)(1). A special exception may only be granted pursuant to section 309(D) of the ordinance. *Id.* Section 309(D)(4) places on the applicant the burden of providing credible evidence that it complied with the requirements of the ordinance. *Id.* at section 309(D)(4). By complying with the specific standards of section 309(D)(4), an applicant identifies the proposal as one which the legislature expressly designated to be appropriate and as one which is presumptively consistent with the health, safety, and general welfare of the community. See *Bray v. Zoning Board of Adjustment,* 48 Pa. Commw. 523, 526-27, 410 A.2d 909, 910-11 (1980) (explaining an applicant's burden of proof and the applicable presumption).

Since the university did not comply with the specific requirements of section 309(D)(4) regarding its proposal to demolish four buildings and to construct a baseball field, it failed to designate its proposal as one that is presumptively consistent with the health, safety, and general welfare of the community. The university's argument, therefore, lacks merit, and the court's conclusion should be affirmed.

The university's remaining issues which are labeled "iii" through "xvi" challenge the court's conclusion that the university failed to comply with the specific standards of sections 309(D)(4)(a)-(g).

In its issue labeled "iii," the university argues that the court erred as a matter of law when it determined the university failed to demonstrate that demolition of the buildings in question will not adversely affect the his-

toric character of the community. This issue was adequately addressed at pages 33 through 35 of the court's June 29, 2006 opinion and order and will not receive further discussion.

In its issue labeled "iv," the university asserts that the court erred in defining "community" in a manner other than as the specific area in question.

In its opinion, the court examined Mr. Sproles' testimony that demolition of the buildings and construction of a baseball field would not alter the historic character of the neighborhood. *Millersville University v. Millersville Borough Zoning Hearing Board,* no. CI-05-05950, op. and order at 34 (C.C.P. June 29, 2006). Mr. Sproles' opinion considered only the properties that can be seen from a drive down North Prince Street. *Id.* The court concluded that while these properties may be the closest in proximity to the proposed baseball field, they are by no means the entire relevant community. *Id.*

The court based this determination upon the plain language of the ordinance. Section 309(D)(4) of the ordinance states that an applicant must provide credible evidence that "the demolition, removal or relocation of the building in question will not adversely affect the historic significance or architectural integrity of the neighboring historic buildings or the historic character of the neighborhood or community." Zoning Ordinance, September 23, 2003 at section 309(D)(4)(a). A neighborhood is an area near or next to a specified place. Black's Law Dictionary 1060 (7th ed. 1999). In the housing context, it describes people living in a particular vicinity and forming a community. *Id.* A community includes all of those homes and businesses within a particular vicinity or locality. *Id.* at 273.

While the properties along North Prince Street would certainly be part of the relevant community, so would any properties to the west of the buildings in question or along streets in close proximity to North Prince Street. A community is more than a single street. The university had the burden of providing credible evidence that the historic character of the neighborhood or community would not be adversely affected by the proposal to demolish buildings and construct a baseball field. Zoning Ordinance, September 23, 2003 at section 309(D)(4)(a). Based upon its review of the record, the court determined that the university failed to meet this burden. *Millersville University v. Millersville Borough Zoning Hearing Board,* no. CI-05-05950, op. and order at 33-35 (C.C.P. June 29, 2006). Thus, the university's argument lacks merit.

In its issue labeled "v," the university asserts that the court abused its discretion in concluding that the university did not present any evidence to support its assertion that the homes in question and the surrounding homes have "no historic significance or architectural integrity." Concise statement of matters complained of on appeal at 5. This issue was addressed in the court's opinion and order of June 29, 2006 at pages 34 and 35. The court acknowledged that the homes are not eligible for listing in the National Register of Historic Places, but concluded that this fact does not mean the buildings, which are over a hundred years old, have absolutely no historic significance or architectural integrity. *Id.* The court, therefore, decided that the university failed to meet its burden.

In its issue labeled "vi," the university contends that the court abused its discretion in finding that the univer-

sity failed to demonstrate that there is no feasibility to continue the properties' current use. This issue was addressed at pages 36 through 38 of the court's June 29, 2006 opinion and order and does not require further discussion.

The university claims in its issue labeled "vii" that the court abused its discretion and committed an error of law in concluding the university's particular needs and master plan are irrelevant to a determination of feasibility. The basis for the court's conclusion regarding this issue was set out at pages 36 through 37 of its June 29, 2006 opinion and order.

In its issue labeled "viii," the university challenges the court's conclusion that the term "feasibility" refers to an objective analysis of the potential to continue a structure's current use. This conclusion was thoroughly discussed at pages 36 through 37 of the court's June 29, 2006 opinion and order and does not require further discussion.

In its issue labeled "ix," the university argues that the court erred in concluding the university "did not present evidence as to what the cost of correcting problems would be or whether the cost would be unfeasible." Concise statement of matters complained of on appeal at 6. The court discussed any relevant evidence at pages 37 through 38 of the court's June 29, 2006 opinion and order.

In its issue labeled "x," the university argues that the court abused its discretion and committed an error of law in finding that the university failed to demonstrate that other uses permitted within the underlying zoning district have been denied or are unfeasible due to constraints on the buildings proposed to be demolished. The university

also argues that the court's treatment of the master plan imposes requirements on the application beyond those of the ordinance.

The court discussed its conclusion that the university failed to meet its burden at pages 38 through 39 of its June 29, 2006 opinion and order. Similarly, the court concluded the university's particular needs and master plan are irrelevant to a determination of feasibility at pages 36 through 37 of the opinion.

In its issue labeled "xi," the university asserts that the court abused its discretion and committed an error of law when it determined the university failed to demonstrate that other adaptive use opportunities do not exist due to constraints related to the buildings proposed to be demolished. This issue was addressed by the court at pages 39 and 40 of its June 29, 2006 opinion and order.

The university contends in its issue labeled "xii" that the court abused its discretion and committed an error of law in determining the university failed to demonstrate that the proposed baseball field will not adversely affect the historic character of the community. In particular, the university argues that the properties are not encompassed by a Historic Preservation Overlay District, but rather "are essentially an isolated island within the university community." Concise statement of matters complained of on appeal at 7.

This argument challenges the governing body's decision to zone the area including these buildings as an Historic Preservation Overlay District. Such a challenge is inappropriate under the circumstances. The court applied the ordinance as written and its decision was re-

flected at pages 40 through 42 of its June 29, 2006 opinion and order.

In its issue labeled "xiii," the university argues that the court abused its discretion and committed an error of law in concluding the university failed to demonstrate that the proposed baseball field will not adversely affect the historic character of the community. This issue was addressed by the court at pages 40 through 42 of its June 29, 2006 opinion and order. The court noted that other privately owned properties will be affected by the construction of a baseball field. *Millersville University v. Millersville Borough Zoning Hearing Board,* no. CI-05-05950, op. and order at 33-35 (C.C.P. June 29, 2006); N.T., May 11, 2005 at 109-10.

In its issue labeled "xiv," the university asserts that the court abused its discretion and committed an error of law in concluding that while the university may have taken steps to assure that neighboring properties will not be structurally damaged by the construction, "it has presented no evidence that the character of these buildings and the historic community as a whole will not be adversely affected by the construction of a modern baseball field." *Millersville University v. Millersville Borough Zoning Hearing Board,* no. CI-05-05950, op. and order at 41 (C.C.P. June 29, 2006). The university also contends that there is no evidentiary support for the court's statement that "[i]nevitably baseball fields have fences, metal seats, illuminated scoreboards, ancillary structures such as dugouts or equipment sheds, announcers and/or music over loudspeaker systems, and spectators to attend the games." *Id.*

This issue was addressed by the court at pages 40 through 42 of its June 29, 2006 opinion and order. Fur-

ther, a baseball field's associated structures, noise, and spectators are matters of common knowledge.

In its issue labeled "xv," the university asserts that the court abused its discretion and committed an error of law when it concluded the university failed to demonstrate that the permitted or adaptive uses of the buildings proposed to be demolished would not provide a reasonable rate of return based on a reasonable initial investment. This issue was discussed at pages 42 and 43 of the court's June 29, 2006 opinion and order, and does not require further discussion.

In its issue labeled "xvi," the university argues that the court abused its discretion and committed an error of law when it found that the university failed to demonstrate that it has not contributed to the buildings existing conditions. The court addressed this issue at pages 43 through 45 of its June 29, 2006 opinion and order.

The issues raised by the university on appeal are insufficient to support its position, and the order of June 29, 2006, denying the request for a variance and the request for a special exception should be affirmed.

This opinion and the opinion of June 29, 2006, constitute the trial court's opinion for purposes of Pa.R.A.P. 1925(a).